IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                 No. CR 04-2015 MV

ALEJANDRO CECENAS-DOMINGUEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Alejandaro Cecenas-Dominguez's *Motion and Memorandum for Downward Departure and Brief Regarding United States v. Booker*, filed December 20, 2004 and February 18, 2005 respectively **[Doc. Nos. 15, 16, and 21]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, ruled at the sentencing hearing that the Defendant's sentence would be reduced pursuant to *Booker v. United States*, 543 U.S. ____, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). The Court now sets forth the basis for its prior ruling in this Memorandum Opinion.

## BACKGROUND

On September 7, 2004, a United States Border Patrol Agent was surveying the Cristo Rey area of Sunland Park, New Mexico. At around 10 a.m., the agent was alerted to sensor activation. Two individuals apparently were walking north from the sensor location. When the agent responded to the location, he saw two men who admitted that they were citizens of Mexico and that they had crossed into the United States illegally. The men were placed under arrest and transported to the Santa Teresa Border Patrol Station.

At the border station, an immigration and criminal history check revealed that Alejandro Cecenas-Dominguez ("Defendant") had been deported from the United States to Mexico on October 27, 1998. Defendant originally was deported as a result of a felony conviction for criminal threats and child endangerment. Defendant pled guilty to an Information charging him with Reentry of Deported Alien Previously Convicted of an Aggravated Felony (8 U.S.C. § 1326(a)(1) and (2) and 8 U.S.C. § 1236(b)(2)).

In his acceptance of responsibility statement, Defendant stated the following:

> On September 7, 2004, I, an alien, was found in Dona Ana County in the State and District of New Mexico, having been previously convicted of an aggravated felony and having been deported from the United States on October 27, 1998 and having not obtained the consent of the Attorney General of the United States for reapplication for admission to the United States. I am very sorry for what I did and will never again break the law.

On May 25, 2005, the Court held a sentencing hearing in Defendant's case. At its conclusion, the Court determined Defendant's case merited a sentence outside the advisory Guidelines range pursuant to *Booker*.

## DISCUSSION

### I. The Impact of *Booker* on Federal Court Sentencing

The *Booker* decision has changed the landscape of federal court sentencing in important ways. In *Booker*, the Supreme Court held that the Federal Sentencing Guidelines ("Guidelines") violated the Sixth Amendment. To remedy the constitutional problem, the Court excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act ("SRA") that made the Guidelines mandatory, along with the appellate review provisions of 18 U.S.C. § 3742(e) and any cross-references to section § 3553(b)(1). Under the new advisory Guidelines scheme, "district

courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." *Id*. Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id*.

After *Booker*, the guideline range is thus only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence. Specifically, a sentencing judge must also consider the provisions of 18 U.S.C. § 3553(a). The overriding principle and basic mandate of that section requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in Section 3553(a)(2). Those purposes are:

> (a) retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment");
> (b) deterrence;
> (c) incapacitation ("to protect the public from further crimes"); and
> (d) rehabilitation ("to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner").

18 U.S.C. § 3553(a)(2)(A)-(D).

In determining the sentence minimally sufficient to comply with § 3553(a)(2)'s purposes of sentencing, the court also must also consider the following factors: (1) "the nature and the circumstances of the offense and the history and characteristics of the defendant"; (2) "the kinds of sentences available"; (3) the guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range; (4) the need to avoid unwarranted sentencing

disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution where applicable.  *See* 18 U.S.C. § 3553(a).

## II. Advisory Guidelines Range

The Court's first step in imposition of sentence after *Booker* is establishing the appropriate advisory Guidelines range, considering factual objections to the PSR and determining whether any downward departures are appropriate.  The Presentence Report ("PSR") assigned Defendant a base offense level of eight pursuant to the United States Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2(a).  The PSR also assigned a sixteen-level enhancement pursuant to § 2L1.2(b)(1)(A) for deportation after a conviction for a felony crime of violence.  Because Defendant's enhancing crime – criminal threatening – has, as an element, the attempted use of force, the enhancement properly was applied.  *See* § 2L1.2, Application Note 1(B)(iii).  With this enhancement, the PSR calculated the adjusted offense level at twenty-four.  Crediting Defendant a three-level adjustment for acceptance of responsibility, the PSR's calculation of Defendant's total offense level is twenty-one. This results in an advisory guidelines range of forty-one to fifty-one months.

At sentencing, Defendant argued for a downward departure based on his status as a deportable alien and extraordinary family circumstances.  Defendant also argued that his case merited favorable treatment pursuant to *Booker* because the facts of his enhancing conviction did not comport with the severity of the sixteen-level enhancement.  At sentencing, the Court rejected Defendant's downward departure arguments.  Thus, in this opinion, the Court only will address its reasons for granting Defendant a reduced sentence under *Booker*.

**III.   Based on considerations set forth in 18 U.S.C. § 3553(a) and *Booker*, Defendant merits a non-Guidelines sentence**

After *Booker*, the Court has increased discretion to consider a defendant's individual circumstances in tailoring a reasonable sentence. Furthermore, after *Booker*, it is the district court's duty to consider the various sentencing factors set forth in 18 U.S.C. § 3553(a). In the instant case, these considerations dictate that a non-Guidelines sentence is appropriate.

**A.   The sixteen-level enhancement does not promote uniformity in sentencing**

In sentencing defendants, the Court strives to achieve uniformity. This goal, "ensuring similar sentences for those who have committed similar crimes in similar ways" and ensuring a match between "sentences and real conduct" often is highlighted by other courts and the Sentencing Commission in discussions about the central utility of the Guidelines. *See Booker*, 125 S. Ct. at 760; *United States v. Wilson*, 355 F. Supp. 2d 1269, 1284 (D. Utah 2005) (the Congressional "command" to achieve uniformity is "one of the fundamental purposes underlying the Sentencing Reform Act"); 18 U.S.C. § 3553(a)(6) (the Guidelines seek "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

The current version of U.S.S.G. § 2L1.2 – unlawfully entering or remaining in the United States – assesses a sixteen-level enhancement "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is ... a crime of violence." Application Note 1(B)(iii) to § 2L1.2 defines a "crime of violence" for purposes of the sixteen-level enhancement as follows:

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses,

-5-

> statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

"Felony" is defined as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." § 2L1.2, Application Note 1(B)(2).

Unfortunately, in certain instances, assignment of the sixteen-level enhancement pursuant to § 2L1.2 does not promote uniformity in sentencing as intended by the Guidelines. This is due, in part, to the wide range of felonies enumerated in § 2L1.2, as well as the section's broad "catchall" category, which includes, as crimes of violence, felonies that have, as an element, the use, attempted use, or threatened use of force. Because the Guidelines do not distinguish between crimes of violence that are more serious and those that are less serious, in the case of a less serious crime, courts have been critical of applying the mandatory sixteen-level enhancement.

In *United States v. Trujillo-Terrazas*, 405 F.3d 814 (10th Cir. 2005), the district court, while expressing serious reservations about imposing the sixteen-level enhancement in an illegal reentry case where the defendant had been convicted of a relatively minor arson offense, did so because the Guidelines required it. At the sentencing hearing, the district court sympathetically stated: "You know what? I don't want to send anybody to jail, and I wish I didn't have to ... I'm sorry, you know, under the circumstances, that I have to do what I have to do." *Id*. at 817. As the Tenth Circuit confirmed on appeal in *Trujillo-Terrazas*, a district court's obligations have changed since *Booker* rendered the Guidelines advisory.

The Tenth Circuit remanded Mr. Trujillo-Terrazas' case for resentencing pursuant to *Booker* "[t]o allow the mismatch between the sentence suggested by a principled application of

the post-*Booker* sentencing framework and the actual sentence given to Mr. Trujillo[.]" *Id*. at 821. "Applying the sentencing factors listed in §3553(a) to Mr. Trujillo's case provides a strong indication that had the district court applied the *Booker* framework, his sentence would have been lower and this lower sentence would be reasonable." *Id*. at 819.  In reaching this conclusion, the court highlighted the district court's voiced regret about imposing the mandatory Guidelines sentence and applying the sixteen-level enhancement, noting that "a potential source of this hesitation was the comparatively innocuous nature of Mr. Trujillo's prior conviction in Oklahoma for third degree arson." *Id*. at 817.  The Oklahoma state court previously had determined that the appropriate compensation for the fire damage was only thirty-five dollars.

In its opinion, the Tenth Circuit focused on uniformity in sentencing, finding that "[t]he relatively trivial nature of Mr. Trujillo's criminal history is at odds with the substantial sixteen-level enhancement recommended by the Guidelines for this conduct." *Id*. at 819.  It explained:

> The state court assessed restitution of a mere $35.00 for Mr. Trujillo's third degree arson conviction, suggesting a quite minor offense.  The Guidelines, however, look only to the conviction itself rather than the actual conduct underlying the conviction.  This blunter approach means that the Guidelines do not distinguish between tossing a lighted match through a car window, doing minor damage, and a more substantial crime of violence such as arson resulting in the complete destruction of a building or vehicle.  To punish this prior conduct in the same manner could be seen to run afoul of §3553(a)(6), which strives to achieve uniform sentence for defendants with similar patterns of conduct.

*Id*. at 819-20.  Considering the defendant's actual conduct, the Tenth Circuit explained that "Mr. Trujillo presents a compelling case that objective consideration of the §3553(a) factors warrant a departure, and perhaps a significant departure from the sentence suggested by the Guidelines." *Id*. at 821.

Post-*Booker*, courts have granted non-Guidelines sentences where, as in *Trujillo-Terrazas*, the actual conduct underlying the prior conviction is so trivial in nature as to be at odds with the severity of the sixteen-level enhancement. In *United States v. Perez-Nunez*, 368 F. Supp. 2d 1265 (D.N.M. 2005), an illegal reentry case decided fifteen days after *Trujillo-Terrazas*, the district court imposed a sentence below the Guideline range where the defendant's prior "crime of violence" was third-degree assault. The defendant spent twenty-four days in jail as a result of this offense. At the time of his conviction, Colorado codified third-degree assault as a misdemeanor punishable by a term of six to eighteen months. Because the crime has an element of the knowing or reckless use of force against the person of another, however, the district court concluded that it was a crime of violence under the Guidelines and properly was subject to a sixteen-level enhancement. *Id*. at 1266-67.

In sentencing the defendant to a term of imprisonment outside of the Guidelines, the district court explained that the enhancement did not promote uniformity because the guideline provision defining "crime of violence" is an overly broad catchall category that "subject[s] defendants convicted of everything from murder, rape and sexual abuse of a minor to simple assault, to the same 16 level enhancement in calculating the proper sentencing range." *Id*. at 1269. The court concluded that this does not produce uniformity but rather "produce[s] a result contrary to the spirit of the Guidelines." *Id*. at 1270.

Similarly, in *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019 (D. Neb. 2005), the district court reduced the defendant's advisory Guidelines sentence in part because the enhancing offense -- driving while intoxicated -- was not as serious as other "crimes of violence" set forth in § 2L1.2. "Although there is no doubt that driving while intoxicated is a serious

offense, it does not involve the same level of culpability as the crimes of violence that form the basis of the steep increase in sentence under the Guidelines." *Id*. at 1030. Although the advisory Guidelines suggested a sentence of fifty-seven to seventy-one months, the court sentenced the defendant to a term of thirty-seven months. *Id*.

      1.    *The instant case*

Defendant merits favorable treatment under *Booker* because the actual conduct underlying his prior conviction is at odds with the severity of the sixteen-level enhancement applied in his case. Defendant's enhancement results from a two-count conviction for criminal threatening and endangering the welfare of a child, to which Defendant pleaded guilty in 1998. Defendant was sentenced to twelve months in jail with 172 days suspended for the criminal threatening count and two to four years imprisonment suspended for the endangerment count.

While the Court agrees that the criminal threatening offense is a "crime of violence" pursuant to § 2L1.2 because it contains, as an element, the threatened use of force,[1] the facts underlying the counts of conviction suggest that a reduced sentence is reasonable. The PSR describes the following conduct: On March 2, 1998, the Manchester Police Department in New Hampshire responded to a call from an apartment complex. The officers were advised that a Hispanic male had chased some people into an apartment with a knife. Upon arrival on the scene, the officers found Defendant lying face down on a couch in one of the apartments. The officers interviewed a thirteen year-old female who had been babysitting in one of the apartments. She stated that Defendant had propositioned her outside the door of the apartment where she was

---

[1] The relevant statute provides as follows: "I. A person is guilty of criminal threatening when: (a) By physical conduct, the person purposely places or attempts to place another in fear of imminent bodily injury or physical contact." N.H. REV. STAT. ANN. § 631:4 (West 2004).

babysitting. She declined. Defendant apparently kept pressuring her, she yelled, and he left the scene. The girl, along with two other females, ran downstairs to contact the police. Defendant appeared and apparently threatened them with a knife, yelling: "I'm gonna kill you, I'm gonna kill you." A male also told officers that Defendant assaulted him with a belt.[2] At the sentencing hearing, Defendant stated that he was intoxicated at the time of the offense and made a mistake.

Defendant's conduct, while serious, does not merit such a substantial enhancement. Certainly, Defendant's conduct is not at the level of other defendants the Court sentences regularly, who have been convicted of "crimes of violence" enumerated in § 2L1.2, such as murder or forcible sexual assault. For serious crimes such as those, a sixteen-level enhancement is proper. *United States v. Sierra-Castillo*, 405 F.3d 932, 942 (10th Cir. 2005) (declining to remand the defendant's case on plain error grounds where the district court applied a sixteen-level enhancement because "[r]ather than the comparatively innocuous nature of the prior conviction in *Trujillo-Terrazas*, ... , Sierra-Castillo's [enhancing] conviction was for the very serious crime of attempted sexual assault"). Defendant's conduct more appropriately warrants the eight-level enhancement applied to defendants previously convicted of aggravated felonies. *See* § 2L1.2(b)(C).

> **B.**     **Section 3553(a) suggests a lower sentence in this case**

In addition to the broader policy considerations outlined above, the Court also must consider § 3553(a) factors in formulating an appropriate sentence.

---

[2] It should be noted that Defendant was not charged with assault.

1.    *The nature and circumstances of the offense*

The Court first considers the nature and circumstances of the instant offense. The offense conduct in the present case consisted of defendant's re-entry into the United States without permission after having been convicted previously of a "crime of violence." While all violations of our immigration laws must be taken seriously, in the instant case, the only aggravating factor is that defendant had previously unlawfully re-entered the country and had been removed, and thus knew that he had no legal right to be here.

Even with a reduced sentence, Defendant will still be punished severely. Because of his immigration status, Defendant may not be eligible for certain Bureau of Prisons programming, and must be placed, at the minimum, in a low-security facility rather than at a more relaxed "camp." Additionally, Defendant will not be eligible for early release.

2.    *History and character of Defendant*

In accordance with 18 U.S.C. § 3553(a)(1), the Court is also to consider the history and characteristics of Defendant. Defendant is a twenty-six year-old Mexican man. Defendant has five siblings, all of whom reside in Mexico and with whom he maintains close relations. Defendant resided in Mexico until he was eighteen. At that time, he moved to New Hampshire, where he resided until he was twenty. He then was deported to Mexico.

From 1998 to 1999, Defendant was in a long-term relationship with Blanca Lidia Peinado-Jemez. Defendant has two children with Ms. Peinado-Jemez, both of whom live with her in Mexico. Since December 12, 2000, Defendant has been in a common-law relationship with Norma Angelica Gomez-Duarte. The couple do not have children, although Ms. Gomez-Duarte does have children from a previous relationship. She and her children reside in Mexico. At the

sentencing hearing, Defendant stated that he supports his two children with Ms. Peinado-Jemez, as well as Ms. Gomez-Duarte's three children. One of the reasons Defendant returned to the United States is to help support these five children. The Court does not want to separate Defendant from his children and his common-law wife for any longer than necessary.

Other than his enhancing conviction in New Hampshire, Defendant has no prior criminal history. At the sentencing hearing, Defendant explained that the incident in New Hampshire occurred because he had been drinking, which was a "mistake." He stated that he has not had any problems "at any other place."

        3.    *Needs of the public and any victims of crime*

Upon completion of service of his sentence, Defendant will be deported to Mexico. He has been advised that he cannot return to the United States. Defendant's counsel emphasized to the Court that Defendant absolutely understands this. For this reason, Defendant does not pose a danger to the public or the victim of his crime. As the court stated in *United States v. Ramirez-Ramirez*, "When a defendant will ultimately be removed and sent out of the country, there is less need for the sentence imposed to protect the public from further crimes of the defendant, or to provide the defendant with needed educational or vocational training." 365 F. Supp. 2d 728, 733 (E.D. Va. 2005).

        4.    *Deterrence*

Defendant understands that he cannot reenter the United States. This Court believes that he has learned his lesson and will not return. From a deterrence standpoint, then, there is nothing to be gained by sentencing Defendant to a forty-one month sentence as opposed to a fifteen month sentence. *See Perez-Nunez*, 368 F. Supp. 2d at 1269 (in granting the defendant a non-

Guidelines sentence, noting that "a 57 month sentence is not likely to deter Perez-Nunez from reentering the country any more than a lesser sentence of 24 months would").

### 5. *Provision of education and vocational training*

Because Defendant is a non-citizen, consideration of needed educational and vocational training is not a factor for the Court's consideration. *See id.* (noting that because the defendant was a non-citizen and would not be eligible for educational and vocational training, "a five year sentence does not provide Perez-Nunez with a greater opportunity to receive treatment than a shorter sentence would").

### D.  Imposition of Sentence

After giving careful consideration to Defendant's case and the recommended sentence, this Court determined at the sentencing hearing that a sentence outside the advisory Guidelines was reasonable and comported with the sentencing considerations set forth in § 3553(a).

Defendant's enhancing offense is more akin to an aggravated felony, which, under the Guidelines, merits an enhancement of eight levels rather than sixteen levels pursuant to § 2L1.2. Using this analogy, an eight-level enhancement from a base offense level of eight leads to an adjusted offense level of sixteen. *See* § 2L1.2(a) & (b)(C). With a three-level credit for acceptance of responsibility, Defendant's total offense level would be thirteen. As a result, Defendant's advisory Guidelines range would be fifteen to twenty-one months. Using these calculations as a guide, the Court determined at the hearing that a sentence of fifteen months was reasonable and was sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**CONCLUSION**

At the sentencing hearing on May 25, 2005, after considering the Sentencing Guidelines, the *Booker* decision, and 18 U.S.C. § 3553(a), the Court granted Defendant a non-Guidelines sentence. The Court has enunciated its findings and the basis for the sentence in this Memorandum Opinion and Order. This Opinion and Order shall be appended to Defendant's judgment and commitment form.

**IT IS THEREFORE ORDERED** that Defendant is committed to the custody of the Bureau of Prisons for a term of fifteen months, with other conditions that appear in the judgment.

**DATED** this 21st day of July, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

Attorney for the United States:
Nelson Spear
Norman Cairns

Attorney for Defendant:
Floyd Lopez